Then we will call Martin v. Administrator NJ State Prison. We have Mr. Brown and Ms. Sullivan here with us. So, Mr. Brown, you may proceed, sir. Thank you, your honor. Can everyone hear me? Yes. Great, thank you. And may it please the court. Micah Brown for the appellant. Micah Brown, Deckard LLP, on behalf of the appellant, Sullivan Martin. I'd like to reserve three minutes for rebuttal. Your honor, the case today is about comity, finality, and federalism. Those core principles that undergird AEDPA require federal habeas courts to give great deference to the decisions, both substantive and procedural, of state courts while they're adjudicating petitioners' habeas petitions. It would be incompatible with those principles to turn AEDPA into a one-way ratchet that awards deference to state courts when they rule against petitioners on procedural points, but conducts de novo review on a rare occasion when a petitioner has won a procedural determination before the state court. Because why is it really de novo review if what we're looking at is the nature of the out-of-time release that was granted by the state court? And looking at the as-within-time release as it's been applied by the state courts here, why shouldn't we simply view that as, you know, a sort of equitable tolling where if they make the decision that they're going to revise something after the fact, it's still out of time. And so it's not pending during that interim period, even if they're calling it as within time rather than using a Latin phrase to describe that. Your honor, so, and I want to make sure I understand your question. You're revising the pendency, a later determination of timeliness? In effect, isn't that what the state courts hear when they're giving this as-within-time release? It's simply a non-proton kind of release that doesn't indicate that a matter is actually pending during that time. It's resuscitating it, but just because they've decided to call it as-within-time doesn't convert it from something with, into something that was actually timely. Well, your honor, I think that there's a distinction here between curing untimeliness and holding the petition to be, or the appeal, I should say, to be timely and issuing a decision on the merits despite the untimeliness. And I think there's a clear distinction in the law there. And I think what the court here did, and I take your point about, well, if they had just used a different phrase, they just called it non-proton, I think that the New Jersey courts have a procedure to declare an appeal, an otherwise untimely appeal, as-within-time. And that if that's the language- I'm not, that doesn't seem to be answering the question though, Mr. Brown. Doesn't, the question is, we're looking at 2244D2. That's the operative provision in AEDPA that we've got to pay attention to. And it says that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. So, the question for us isn't, you know, so much whether New Jersey decides it wants to bring a claim back from the dead, which is what happened here. It was not timely under their own post-conviction relief statute, and they chose to say, okay, we're going to let you bring it back. Now, the question, and if this isn't Judge Krause's question, I apologize to her, but it's a question I've got. I think it's her question. How does the fact that they choose to resurrect the claim say anything to whether it was pending during the years and years that passed when it wasn't pending? It was just, it was an out-of-time claim. It was dead. It wasn't there. How does that constitute pending within the meaning of 2244D2? Your Honor, we know from the case law that an appeal or a petition is timely and properly filed if the rules of that state and the state courts say it is. And if we're going to give epidefference to timeliness, well, pending is just the flip side of timeliness. If it's really... No, pending is a completely different word, right? You can say something, they can say, we choose to treat this as timely, but the fact that they choose to treat it as timely doesn't change the historical fact that it was not pending. Pending has a meaning in the English language, and it means existing in fact during that period. And it was not existing in fact during that period. I mean, how do we get from we choose to treat this as timely in the historical record here? Your Honor, pending includes the time of the action from the filing to the completion. And the Supreme Court has allowed that. For example, in the Jimenez case that the court brought to our attention on Monday, certainly in the direct appeal context, it can restore the pendency. A later state court determination to hear an appeal as within time can restore the period of pendency. What relevance does that finality under Jimenez have for our assessment here of the post-conviction proceeding and whether it's pending for purposes of EDSA? Yes, Your Honor. So I think Jimenez is, as I noted, I don't think it's exactly directly on and it's spoken D1, right? It was talking to subsection D1 and it was dealing with the question of finality, not the question of pending, right? Your Honor, yes, that's true, but it did ultimately restore the pendency of a direct appeal. So I... True, but Jimenez was speaking about finality under D1. We're wrestling with the question of pending under D2. Aren't those two separate questions? I take Your Honor's point. I guess the point I'm trying to make is that ultimately a federal habeas court has to give that deference and that the timeliness, giving deference to the timeliness determination without giving deference to the pending determination isn't really giving full epidefference. So I take your point. You're focused on the interest in comedy and giving full effect to the state court's view, but we're also concerned with EDSA, as you mentioned at the outset, with finality. And when we're looking at what Congress intended in the term of something being pending during that period, don't we also need to take account of the finality interest and whether something that is untimely, but accepted for review by the state court really can be deemed pending, consistent with that interest in finality? Your Honor, the interest in finality under EDPA is meant to protect the integrity of state court proceedings to preserve them from collateral attack in later federal courts. And to the extent that there's a problem here, I mean, this is a rule that the New Jersey courts have created that the if they feel that the argument I'm making were to give too much credit to New Jersey courts, you know, that's within their authority to change. And that's the agency that Congress empowered by EDPA. And that's the finality that Congress was seeking to protect. Are you asking us here to create a circuit split? I'm sorry? Are you asking us to create a circuit split? I don't believe so, Your Honor. I don't believe that we, from the case law that I have seen, I don't believe that there's another case that deals quite with these circumstances. I believe that this can be distinguished. Destroyer versus Dormer, the circuit case, not counsel pretty directly against what you're asking us to do. That's the case where they specifically, they'd circuit distinguish Jimenez, right? Your Honor, the difference in the Vermeer case was that he was granted, that petitioner was granted leave to appeal despite being untimely. It wasn't a cure of an otherwise untimely appeal. It was a grant of basically a permission notwithstanding. In both cases, the question was, what does the word pending mean? And they said, in effect, it's not pending if it was not in existence. And the fact that the state decides to bring it back doesn't mean that it's pending, right? I mean, isn't that case pretty darn close to what you're asking us to do? Well, Your Honor, I would distinguish it on the basis that, first of all, the Dormier court never, they didn't have to examine the importance of an appeal notwithstanding untimeliness or a cure of an untimely appeal. And so I would distinguish it on that basis and that the Dormier decision never had to address that logic and of course didn't. Whereas the case today, we have an appeal that was timely because the state court cured what would otherwise have been an untimely appeal. And so I would say no. Was this a question of semantics? I mean, is your argument ultimately one that just boils down to the semantics of something being as within time on the one hand or being called within an allowance for appeal or notwithstanding untimeliness or non-protunct in other cases? Well, Your Honor, I mean, one way to look at it would be that it's about semantics. I think, though, that the words that the state agencies, the very agencies empowered by AEDPA and whose interests are to be protected by AEDPA, the choices that they make are important and that federal habeas courts need to respect those choices. And if New Jersey wants to have a mechanism allowing an appeal notwithstanding untimeliness or if they want to have an appeal or a mechanism to hear an appeal as within time, it's incumbent upon federal courts to respect the state's choice in that a one-way street where every time a petitioner loses a... Let's accept that for the sake of argument for a minute. And you keep talking about if they want to make an appeal timely. The Molina case that you're leaning on is about direct appeals. We're talking about a post-conviction relief effort here. Do you have anything that indicates that the Molina rule that you want us to adopt actually does operate in New Jersey in the post-conviction relief context? Absolutely, Your Honor. Now, as you noted, Molina was a direct criminal appeal and the rules that the court referenced in the letter of Monday also relate to direct criminal appeals. Similarly, the cases, New Jersey cases, state against Jackson and state against O'Donnell address curing, in that instance, curing a late petition, not a late appeal from a denial of post-collateral relief. And so Molina is not directly on point, you're right, Your Honor, because it deals with a direct appeal rather than a collateral appeal. However, New Jersey courts have fairly routinely relied on Molina to grant as-within-time relief to late appeals from denials of collateral relief. For example, in state against Salter, 2015 Westlaw 6442342, the New Jersey Superior Court Appellate Division, in very similar circumstances to Mr. Martin's, said, although not directly on point, Molina is sufficiently analogous to be applicable and it granted an appeal as-within-time. In state against- Would you give us the citation one more time? Yes, Your Honor. State against Salter, 2015 Westlaw 6442342, and there's also state against Briston, 2000-B-R-I-S-T-O-N, 2012 Westlaw 4839305, granting the same relief. And in state against Pine, that's P-Y-N-E, 2011 Westlaw 6782860, after conducting a Molina analysis, the court denied relief, but they did rely on Molina in coming to that determination. So as I said, Molina is not quite directly on point because that deals with a direct criminal appeal rather than an appeal from the denial of collateral relief. However, the rules that Molina cites are appellate rules rather than the rules for a petition for collateral relief, and the New Jersey courts have not been shy in relying on Molina to make a similar determination as they made for Mr. Martin. Okay. Judge Krause or Judge Restrepo, any further questions for Mr. Brown? Donna. Maybe you could address equitable tolling, where we wouldn't be looking to state law, but simply as a matter of federal law and how we could have, I understand the arguments you've made in your brief about due diligence in terms of the initial outreach to counsel, but what about the intervening years after that where there's no indication of further action until the 2012 period? So, Your Honor, I'm sorry. I'm having just a little bit of trouble hearing you, but I believe I understand you'd be asking me whether my client was diligent in pursuing his appeals or was there another element to that question? Yes, if you can address that part of your argument. Yes, Your Honor. And Mr. Martin made numerous attempts to get a hold of his counsel and the appointed defenders division, the public defender's office, I should say. And as we said in our brief, we're not conceding that he wasn't diligent. He sent, over the years, he sent at least five letters to either his counsel or to the public defender's office. Ultimately, when he couldn't get an answer from anyone, he sent a letter directly to the court pleading with the court to just send him a copy of the judgment so that he could file a pro se appeal. And then ultimately, when he filed his pro se appeal in his motion for as within time relief, he relied on the principles as were espoused in Molina. But Your Honor, as I said, we believe that the real issue here is the lack of deference. We do not concede that he wasn't diligent. We believe he was. But even leaving that aside... Why are we even thinking about deference in that situation? Doesn't Holland tell us that's simply a matter of federal law? We're not deferring to the state's assessment of due diligence at that point, right? Your Honor, if he had been... The issue here is that it's a state determination of whether he was timely, whether his appeal was pending, whether it was timely in New Jersey. And the New Jersey courts... That's a separate question, right? The question that's being put to you is about equitable tolling and whether or not the state chooses to give him a call his appeal timely or not, isn't the question of whether he was diligent in pursuing his rights strictly a matter of federal law? That is, whether he was diligent or not. That's a question to be determined as a matter of AEDPA, not as a matter of the state law about timeliness, right? We're not talking about finality and timeliness. We're talking about due diligence. Your Honor, if I could just dive back in though, it was a state procedural determination that influenced the outcome of AEDPA and that whether the state gave him the benefit of the doubt under an equitable tolling principle or under a New Jersey statutory tolling principle or for whatever reason the state used, once the state made that decision, the district court should have deferred to it. So your argument about due diligence only goes to issue of whether it's pending or not, you're not making a distinct argument under AEDPA's own due diligence provision? Is that right? Your Honor, that's again, it's not a point I would concede, but that's not one of our affirmative arguments in this case. Great. Thanks very much, Mr. Brown. We'll have you back on rebuttal. Ms. Sullivan. Thank you, Your Honor. May it please the court, Maura Murphy-Sullivan, New Jersey Special Deputy Attorney General, Acting Assistant Prosecutor, representing appellees. Appellees ask this court to affirm the district court's order with respect to both statutory tolling and equitable tolling. First, in addressing statutory tolling, the period in which an application is pending goes forward, not back. Meaning statutory tolling, the defendant could be awarded, would go from 2012 when he filed his notice of motion and go forward. Before that, there was nothing pending, so he should not be entitled to statutory tolling for that period. Does the Cary case have any bearing here on what constitutes pending and doesn't the Cary v. Sapple case that your opponents rely on? What I believe Cary gives us is to say that an application is pending from an adverse determination by the lower court until a timely appeal is filed. Here, there was no time. And the state declared it timely. Does Cary, in the face of that, does Cary say, hey, if the state says it's timely, it's timely, and so consequently it's pending? Is that the import of Cary? Here, I would say that the timeliness determination, the appellate division accepting it as within time, only goes to the properly filed determination under D2 that we're talking about in terms of statutory tolling. So I believe that even though the appellate division accepted it as within time, that's a application or petition or motion was properly filed. It doesn't answer the second question about when it was pending. Why shouldn't we give that respect to the state court's process? We want to encourage petitioners to proceed through that process to the extent that it is available before turning to the federal courts. So if it is part of a state process, and here it seems in terms of granting this as within time relief routinely where there's the allegation of ineffective assistance having caused the delay, then why shouldn't we allow that to be litigated through the state courts and defer to their own determination that it is a live matter throughout that whole process to be filed as timely, not allowing it out of time, but actually deeming it timely under state law? So deference, I think, is given whether it's denied or granted as within time. I think we defer to the state courts in terms of whether it's properly filed. But the fact remains that nothing was pending before the state court, even so much as a motion to excuse that untimely. In those years intervening, there was no motion to pursue his appellate rights and continue to litigate that petition, that post-conviction relief matter. There was nothing pending in the interim. Help me with this language from the Kerry decision. An application is pending as long as the ordinary state collateral review process is in continuance, i.e., until the completion of that process. Is that the Supreme Court telling us that it is pending until it's done? I would submit that Kerry spoke of whether the issue in Kerry had to deal with the timeliness of that petition. And I don't think anything suggests in Kerry that, for example, its holding in that case talked about pending is from the adverse determination going to a timely appeal. So, even in Kerry, it's an example of how federal courts would toll the time from the start of an adverse decision going forward. Here, it would be tolling from the time where he filed his motion going forward. I don't think there's anything that warrants going back two years of tolling. And I recognize that the state must—that this court might have concerns about exhaustion. But I think that's a separate consideration. I think you can both have timely filings in habeas court as well as to have exhaustion. I think they can coexist. And here, you would want petitioners to make timely state court filings in order to exhaust their rights. Would we be having this discussion if the as-within-time extension, if you will, that was allowed by the state court was, say, 10 days instead of 10 years? And I think we wouldn't be having that discussion because he'd still be within the one-year habeas clock. I think the issue here— What if those 10 days put him outside the clock for other reasons? If a 10-day delay in filing that was treated by the state appellate court as within time, and they proceed to address it on the merits, and then there's eventually a federal habeas petition where those 10 days are dispositive as to whether it's within the one year or not, would you be making the same arguments? In terms of statutory tolling, I think that's important that if you're outside—and here, defendant is outside that habeas one year, whether it's 10 days or seven years. But here, significantly, it's seven years. But his habeas clock expired well before he filed his state motion to file as-within-time. I think it's the same, the amount of time, but here it is in a significant period of time. In addition to statutory tolling, he would have been able to in those 10 days under your example, if something happened, he would still be able to argue for equitable tolling. But in terms of statutory tolling, I think in giving meaning to the habeas statute of limitations of the one year as well as to statutory tolling, I think a reading of that would say, sticking to the guidelines, whether it's 10 years or seven days, I think the result would be the same. Why doesn't Jimenez have relevance here? If we are going to treat a petition that's coming up within D-1 as final, despite these kinds of gaps in time, why doesn't that also inform what we consider pending up until finality? I think Jimenez talks about in talking about when the habeas clock starts. I think pendency is a statutory tolling determination as it pertains to a separate part of that statute, 2244 D-2, and that talks about pausing the clock. So I think the finality determination that the court was making in that Supreme Court case is different from the statutory tolling argument under the separate section of the statute. Is there any distinction between the idea of timeliness and the idea of pending? I mean, if something is timely, is it pending? And if your position is that it's not, what case are you pointing to to tell us that those things are distinct? I would argue that timeliness goes to properly filed. I apologize, I don't have those sites offhand to specifically cite that, but I believe that the case law talks about conditions of filing. I don't want to speak to a case that I can't specifically cite right now, but I believe that conditions of filing would go to timeliness, which goes to improperly filed. But I believe pendency is just a separate determination. Pendency can flow from timeliness and properly filed. But again, in this case, even if this court were to give statutory tolling to a properly filed motion, even if this court were to give statutory tolling, I believe that it would go forward and not back to say that that petition is pending from the time you filed the motion to file as within time going forward through the appellate division's decision on the merits. Okay. You don't make any distinction there between the as within time relief versus equitable tolling within the state courts? Um, so I think it's a whatever state courts are doing as to equitable tolling, I think is they grant their motions pertaining as to their own purposes of granting, excusing a late filing to address the merits. That I think is separate and distinct from the federal standard in which this court would apply to determining whether to actually told the federal habeas statute limitations. I think those two decisions are distinct and have different standards. Would you recognize any exceptions to a rule like that? Say, on federal habeas petition, we had before us a claim that was clearly meritorious where the appellate court having accepted it as within time had reached a decision that on its face was contrary to the U.S. Constitution. Nonetheless, you would strictly apply this rule to say outside, although it's within time from the final determination of the state court, uh, it's a timely filing of the federal appeal, that it's not within the one year from expiration of the Supreme Court, uh, cert, uh, filing, um, in a direct appeal. And that's, that would be the end of the story. No, no exceptions for, uh, as to the merits of the arguments or even actual innocence? Well, I think that in terms of statutory tolling, we would go by the one year epoch clock. We'd start and stop it in an appropriate time for, um, statutory tolling. And then I believe that any other equitable considerations that would have to be made, that would go to equitable tolling argument and not necessarily statutory tolling. If that answers your question, I apologize, Your Honor. And equitable tolling there, you mean under, under EDGAR, not, not as informing what, what constitutes a pending petition? Um, in terms of statutory tolling or equitable tolling? Um, I, I think that the statutory tolling, um, it, it, it discusses properly filed and pending, um, equitable considerations, I think it's a separate analysis. Okay. Uh, any further, uh, questions, Judge Krause or Judge Restrepo? All right. Then thank you very much, Ms. Sullivan. Uh, Mr. Brown, you reserved three minutes. Thank you, Your Honor. I would point out by, by just emphasizing the definition of pending, uh, under carry is that until the application has achieved final resolution through the state's post-conviction procedure, by definition, it remains pending. Now we know that if... Well, hold on, hold on just a second because at, right in that same vicinity, the court says an application is pending as long as the ordinary state collateral review process is in continuance. What's ordinary about a non-pro-tunk or a, or an out of time permission? Isn't that an extraordinary step, not an ordinary step in the post-conviction relief process? Your Honor, again, I, I think we would have to give deference to the state, the state ruling. The state could have said it's... That's true. That's true. I'm not, I'm, I'm not fighting, I'm not fighting your premise, which is the state allowed it, and I'm not fighting your premise that we, we give deference to state decisions like that. I'm trying to engage with you and get you to engage with me on the reliance you're putting on Kerry because you seem to be saying, and I take you to be saying that Kerry tells you as long as it's, as the process is going on, you have to say it's pending. But what Kerry, the precise language of Kerry is, as long as the quote, ordinary state collateral review process is permission, something that fits within the quote, ordinary state collateral review process, or is it not in fact an exception, something extraordinary that the state allows, but it's not the ordinary state collateral review process? Your Honor, another, another from Kerry is the, the Supreme Court said that if the, if the California Supreme Court had said that the appellant's four and a half month delay was unreasonable, that would be the end of the case. So whether something is unreasonable or extraordinary, you know, I take your Honor's point, this was a long delay, but the, the New Jersey courts, the New Jersey Superior Court Appellate Division didn't say it was unreasonable, didn't say it was extraordinary, they accepted it as within time. And at this point, to say that, that Martin's, that will give credit to the timeliness determination, but not to the pending determination would, would make the, would make the deference that we give to that New Jersey state court determination hollow. That if, if we're not going to give deference to it on, on one, then, then there's no, there's no true epideference in that scenario. And at the end of the day, Your Honor, I think that's... Did they ever, did they ever give a pendency determination? You just, you know, some people would say, hey, you just put the rabbit in the hat there. But when you said you got to give deference to their pendency determination, did the state courts ever make a statement about pendency, or did they only make a statement about timeliness that they would treat it as timely file? Your Honor, they only... Yes, Your Honor. As far as I know, there's no explicit determination on the record that it was pending throughout. That being said, if, if, if we strip away that pendency, if we take that away from the New Jersey state court, their ability to restore pendency through, through an adjudication of timeliness, it's not really epideference. And on the rare occasion when it benefits a prisoner, or a petitioner, I should say, the petitioner should get the benefit of epideference where warranted. Your Honor, that's why today what we're asking is for a remand for Mr. Martin to have the opportunity to present his habeas petition on the merits. Okay. I want to thank you, Mr. Brown and your firm, Deckard, for taking this representation on. It's in the best tradition of the bar. We also appreciate the argument provided by Ms. Sullivan. We've got the case under advisement.